IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KELLY JONES,**

    Plaintiff,

v.                                                                                Civil Action No. **3:23CV249 (RCY)**

**DIRECTOR,** *et al.***,**

    Defendants.

### MEMORANDUM OPINION

Kelly Jones, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to *Bivens*.[1] The action proceeds upon the Amended Complaint. ECF No. 15. The matter is before the Court on the Motion to Dismiss filed by Defendants. ECF No. 35. Defendants provided Kelly with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). For the reasons set forth below, the Motion to Dismiss will be GRANTED and the action will be DISMISSED.

### I. STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Relevant here, a Rule 12(b)(1) motion may attack the petition on its face, asserting that the petition fails to state a claim upon which subject matter jurisdiction can lie. *Id.* (citing *Adams*, 697 F.2d

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

at 1219). In such a facial attack, the Court applies the same standards of review and interpretation as it would in assessing a motion to dismiss filed pursuant to Federal Rule of Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or

complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. ALLEGATIONS AND CLAIMS IN THE AMENDED COMPLAINT

On November 8, 2019, Jones was seen in the medical department at FCC Petersburg after having a seizure and hitting his head. ECF No. 15, at 5.[2] Jones was charged a $2.00 copay for this visit. *Id.* Jones asserts that such a charge is prohibited by 28 U.S.C. § 4048(b)(2).[3] ECF No. 15-1, at 3. Over the ensuing months, Jones filed informal complaints and grievances regarding being charged a $2.00 copay. ECF No. 15, at 5–9. Jones met with no success and various prison officials improperly processed his grievance appeals and rejected the same as untimely. *Id.*

Based on these allegations, Jones makes the following claims:

| | |
|---|---|
| Claim One | Defendants Health Service Administrator, Beasley, Ramsey, and Laybourn violated Jones's rights by charging him a $2.00 copay for emergency visits and chronic care visits which is prohibited by 18 U.S.C. § 4048. *Id.* at 10. |

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, capitalization, and punctuation in the quotations from Jones's submissions.

[3] That provision provides: "The Director may not assess or collect a fee under this section for preventative health care services, emergency services, prenatal care, diagnosis or treatment of chronic infectious diseases, mental health care, or substance abuse treatment, as determined by the Director." 18 U.S.C. § 4048.

| | |
|---|---|
| Claim Two | "Defendants Warden (FCC-Petersburg), Administrative Remedy Coordinator (FCC-Petersburg), L. Allen, Legal Assistant (FCC-Petersburg), Regional Director (Regional Office), Administrative Remedy Coordinator (Regional Office), Director (Central Office), and Administrative Remedy Coordinator (Central Office) were all made aware of this violation of the law and are also guilty of violating 18 U.S.C. § 4048(b)(2) and/or conspiring with local staff to violate this law." *Id.* at 11. |
| Claim Three | "Defendants Warden (FCC-Petersburg), Administrative Remedy Coordinator (FCC-Petersburg), L. Allen, Legal Assistant (FCC-Petersburg), Regional Director (Regional Office), Administrative Remedy Coordinator (Regional Office), Director (Central Office), and Administrative Remedy Coordinator (Central Office) by refusing to process Plaintiff's Administrative Remedies, and deliberately blocking Plaintiff's attempts to seek redress from the prison through the prison grievance system, are retaliating against Plaintiff unlawfully in violation of the Eighth Amendment of the Constitution, and in violation of the Plaintiff's First Amendment rights and his Fifth Amendment rights of due process and access to court." *Id.* |
| Claim Four | All Defendants are "guilty of violating the [Prison Litigation Reform Act] and the Code of Federal Regulations regarding the processing of inmate complaints . . . ." *Id.* |

### III. ANALYSIS

**A. The *Bivens* Remedy**

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Specifically, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020). The Supreme Court explained that although "the Fourth Amendment does not provide for money damages 'in so many

words,'" the court could nevertheless "authorize a remedy under general principles of federal jurisdiction." *Ziglar v. Abbassi*, 582 U.S. 120, 131 (2017) (quoting *Bivens*, 403 U.S. at 392, 396)). In the following decade, the Supreme Court recognized only two additional contexts, or implied causes of action, in which an individual could pursue a claim for monetary damages against federal officials for constitutional violations. *Id.* The Supreme Court has explained:

> In *Davis v. Passman*, 442 U.S. 228 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.* at 248–249. And in *Carlson v. Green*, 446 U.S. 14 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. *See id.*, at 19. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

*Id.* (parallel citations omitted). As recently explained by the United States Court of Appeals for the Fourth Circuit:

> Though it initially described *Bivens* broadly as establishing that "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right," *Carlson*, 446 U.S. at 18, in the 43 years since *Carlson*, the Court has "consistently rebuffed" requests to expand implied *Bivens* actions. *Hernandez v. Mesa*, 140 S. Ct. at 735, 743 (2020); *see also Egbert v. Boule*, 142, S. Ct. 1793, 1799 (2022). In the last five years alone, the Court has scaled back *Bivens* significantly, delivering a trilogy of opinions expressing opposition toward any expansion of *Bivens* actions. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (noting that "expanding the *Bivens* remedy is now considered a disfavored judicial activity" (internal quotation marks omitted)); *Hernandez*, 140 S. Ct. at 742–43 (noting that if "the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that we would have reached the same result" (alterations in original) (internal quotation marks omitted)); *Egbert*, 142 S. Ct. at 1802 ("Now long past the heady days in which this Court assumed common-law powers to create causes of action [as in *Bivens*], we have come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." (internal quotation marks and citations omitted)).

*Bulger v. Hurwitz*, 62 F.4th 127, 136 (4th Cir. 2023) (alterations and omission in original) (parallel citations omitted). Thus, "the Supreme Court all but closed the door on *Bivens* remedies." *Dyer v. Smith*, 56 4th 271, 277 (4th Cir. 2022) (citing *Egbert*, 596 U.S. at 504 (Gorsich, J. concurring)). However, instead of overruling *Bivens*, the Supreme Court has elected "to severely limit" its reach "by imposing a highly restrictive two-step analysis" that district courts must follow. *Bulger*, 62 F.at 136–37 (citing *Hernandez*, 589 U.S. at 102).

First, "a court must determine whether a claim falls within the causes of action authorized under the Supreme Court's three *Bivens* cases—*Bivens*, *Davis*, and *Carlson*—or whether it 'arises in a new context' or involves a 'new category of defendants.'" *Id.* (some quotation marks omitted) (quoting *Hernandez*, 589 U.S. at 102).[4] "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Ziglar*, 582 U.S. 139. If the context is "new," then the court must "'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension' of *Bivens*." *Bulger*, 62 F.4th at 137 (some quotation marks omitted) (quoting *Hernandez*, 589 U.S. at 102). "This 'special factors' inquiry must focus on 'separation of power principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." *Id.* (quoting *Hernandez*, 589 U.S. at 102). "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?' If there is a rational reason to think that the answer is 'Congress'—as will be in most every case—no *Bivens* action may lie." *Egbert*, 596 U.S. at 491–92 (internal quotations omitted).[5]

---

[4] "If the context is not new . . . then a *Bivens* remedy continues to be available." *Tun-Cons v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019).

[5] In *Egbert*, the Supreme Court noted that: "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. However, the Fourth Circuit has

## B. Jones's Claims Present a New Context

The Court first considers whether this case involves a "new context" for *Bivens* purposes. In Claims One and Two, Jones argues that Defendants violated his rights by improperly charging him a $2.00 copay. In Claims Three and Four, Jones asserts that Defendants violated his rights by failing to properly process his grievances. Jones's claims do not fall within the implied causes of actions authorized under *Bivens*, *Davis*, or *Carlson*.

"The Supreme Court has instructed not only that 'new context' must be understood broadly, but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846 (citing *Egbert*, 596 U.S. at 496). Thus, the Supreme Court "has made clear that, for a case to be 'different in a meaningful way from [the three] previous *Bivens* cases,' a radical difference is not required." *Tu-Cos*, 922 F.3d at 523 (alteration in original) (quoting *Ziglar*, 582 U.S. at 139). The Court has provided non-exhaustive examples and explained that:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. And more recently, the Supreme Court in *Egbert* added that, "'uncertainty alone', as to whether allowing a *Bivens* claim would have systematic consequences," is sufficient to foreclose relief. *Tate*, 54 F.4th at 846 (quoting *Egbert*, 596 U.S. at 493).

---

continued to utilize the two-step inquiry even after *Egbert*. *See, e.g.*, *Bulger*, 62 F.4th at 137–41 (applying two-part inquiry to find no *Bivens* remedy for failure to protect claim); *Tate v. Harmon*, 54 F.4th 839, 844–48 (4th Cir. 2022) (applying two-part inquiry to find no *Bivens* remedy for conditions of confinement claim).

The Fourth Circuit has recognized that "[t]he Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*," and it has thus "repeatedly heeded that warning." *Bulger*, 62 F.4th at 137 (citations omitted). In recent years, the Fourth Circuit has determined that a claim that Bureau of Prisons officials failed to stop a transfer to a lower grade medical facility and failed to protect an inmate from inmate-on-inmate violence resulting in his death was a new context. *See id.* Similarly, the Fourth Circuit has concluded that an inmate's "'degenerate' conditions of confinement" claim was sufficiently different "from any Supreme Court decision finding a *Bivens* cause of action." *Tate*, 54 F.4th at 842.[6] Applying these principles, the Court has no problem concluding that Jones's claims about improper copayment charges and failing to properly process his grievances present new *Bivens* contexts.

## C. Special Factors

The second step of the analysis requires the Court to determine whether there are any "special factors counselling hesitation in the absence of affirmative action by Congress" in recognizing an implied cause of action under *Bivens*. *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must center on 'separation-of-powers principles.'" *Tate*, 54 F.4th

---

[6] In *Tate*, the Fourth Circuit also dispelled any notion that *Farmer v. Brennan*, 511 U.S. 825 (1994), provided a fourth context for *Bivens* in the Eighth Amendment prisoner arena. 54 F.4th at 847. The Fourth Circuit explained:

> In *Farmer*, the Eighth Amendment claim involved the failure of prison officials to protect an inmate from an attack that involved a beating and rape, even though the officials knew that the prison had a "violent environment" and that the inmate was "particularly vulnerable to sexual attack." 511 U.S. at 831. Importantly, however while the Court allowed the action to proceed, it never addressed whether the claim was properly a *Bivens* claim. Moreover, the Court has never considered *Farmer* a *Bivens* case when cataloging *all* of its *Bivens* cases. *See Egbert*, 142 S. Ct. at 1799–1800, 1802; *Hernandez*, 140 S. Ct. at 741; *Ziglar*, 137 S Ct. at 1844–55, 1857.

*Id.* (parallel citations omitted).

at 844 (citing *Hernandez*, 140 S. Ct. at 743). The special factors that courts should consider "overlap [with] the factors courts are to consider when determining whether a purported *Bivens* claim arises out of a new context." *Bulger*, 62 F.4th at 140 (citing *Egbert*, 62 F.4th at 492). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (citing *Hernandez*, 140 S. Ct. at 743). Once again, the Supreme Court has not provided a comprehensive list of special factors, however, the lower "courts are instructed to consider 'whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed.'" *Dyer*, 56 F.4th at 278–79 (quoting *Ziglar*, 582 U.S. at 136). Courts must also look at whether "there is an alternative remedial structure present in a certain case." *Id.* (citations omitted). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U.S. at 137). Moreover, the Fourth Circuit has repeatedly "held that . . . that special factors . . . counsel against extending *Bivens* in the prison context." *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 F.4th at 139–42; *Tate*, 54 F.4th at 847–48).

    1. <u>Jones Has Alternative Remedies</u>

Here, alternative remedies exist for Jones to pursue his underlying claims. Defendants contend that Jones may file grievances through the Bureau of Prisons's Administrative Remedy Program (ARP"). ECF No. 36, at 12–13. Specifically, the ARP allows "all inmates in institutions operated by the Bureau of Prisons," 28 C.F.R. § 542.10(b), "to seek formal review of an issue relating to any aspect of his/her own confinement," *id.* § 542.10(a). Although the ARP does not provide the opportunity for monetary damages, it "nevertheless offer[s] the possibility of meaningful relief and therefore remain[s] relevant to [the court's] analysis." *Earle v. Shreves*, 990

F.3d 774, 780 (4th Cir. 2021) (citations omitted). The Supreme Court has determined that "*Bivens* relief [is] unavailable [where] federal prisoners could, among other options," use the ARP to pursue a claim. *Egbert*, 596 U.S. at 497 (citing *Malesko*, 534 U.S. at 74); *see Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that "the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim," and determining that it "need not inquire any further to decide this appeal" (citing *Egbert*, 596 U.S. at 497)). *But see Fields v. Fed. Bureau of Prisons*, 109 F.4th 264, 274 (4th Cir. 2024) (concluding "because [inmate] has alleged that officers intentionally subverted the operation of the ARP, its technical existence does not bar [inmate's] *Bivens* claim").

    2. <u>Other Special Factors Counsel Against an Extension</u>

While the existence of the ARP is likely reason enough to foreclose Jones's claim, other special factors similarly counsel against recognizing a cause of action under *Bivens*. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *Ziglar*, 582 U.S.at 148. The Supreme Court recognized that,

> "[s]ome 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. The Court has said in dicta that the Act's exhaustion provisions would not apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 148–49 (internal citations omitted). As the Fourth Circuit explained recently, "Congress's decision not to include an individual-capacity damages remedy in the Prison Litigation Reform Act 'speaks volumes and counsels strongly against judicial usurpation of the legislative function.'" *Nellson*, 2023 WL 3336689, at *5 (citing *Bulger*, 62 F.4th at 140–41). Accordingly, the lack of

10

legislative action counsels against extending a *Bivens* remedy to the claims alleged here. *See id.*; *cf. Springer v. United States*, No. 21–11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (determining that Congress "has legislated (post-*Carlson*) regarding prisoner's rights" and chose not "to extend *Carlson* to other 'kinds' if prisoner claims under the Eighth Amendment" and that a conditions of confinement claim "is an issue best left for Congress to address"). Indeed, the Fourth Circuit recently rejected an inmate's "attempt to extend the *Bivens* remedy to his claim that the defendants violated his First Amendment rights by retaliating against him for filing grievances." *Earle*, 990 F.3d at 781 (citations omitted).

Because the Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102). As discussed above, several special factors counsel against expanding the remedy here. Thus, the Court concludes that *Bivens* is not a cognizable remedy for Jones's claims. Accordingly, the Motion to Dismiss will be GRANTED.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 35) will be GRANTED. The action will be DISMISSED for want of jurisdiction and as legally frivolous. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g). Defendants moved for an extension of time to respond on behalf of Defendants in their individual capacities until such time as the Court rules on the Motion to Dismiss. Given the Court's ruling and dismissal of the action, the Motion for Extension of Time (ECF No. 38) will be DENIED AS MOOT.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/ RCY  
Roderick C. Young  
United States District Judge

Date: September 16, 2024  
Richmond, Virginia